

# AFTAB PUREVAL
# HAMILTON COUNTY CLERK OF COURTS

## COMMON PLEAS DIVISION

```
ELECTRONICALLY FILED
August 28, 2020 11:55 AM
    AFTAB PUREVAL
   Clerk of Courts
  Hamilton County, Ohio
 CONFIRMATION 979827
```

**JESSE CARRADINE JR**   **A 2003038**

**vs.**

**ST BERNARD SOAP CO**

**FILING TYPE: INITIAL FILING (IN COUNTY) WITH JURY DEMAND**

**PAGES FILED: 12**

EFR200


VERIFY RECORD

**IN THE COURT OF COMMON PLEAS**
**HAMILTON COUNTY, OHIO**

| | | |
|---|---|---|
| JESSE CARRADINE, Jr.<br>309 S. Wayne Ave., Unit #13<br>Cincinnati, OH 45215 | )<br>)<br>) | CASE NO. |
| | ) | JUDGE: |
| Plaintiff, | )<br>) | |
| v. | )<br>) | |
| | ) | **COMPLAINT FOR DAMAGES** |
| ST. BERNARD SOAP CO.<br>5177 Spring Grove Avenue<br>Cincinnati, OH 45217 | )<br>)<br>) | **AND INJUNCTIVE RELIEF**<br><br>**JURY DEMAND ENDORSED**<br>**HEREIN** |
| **Serve Also:**<br>St. Bernard Soap Co.<br>c/o CT Corp. System (Stat. Agent)<br>4400 Easton Commons Way, Ste. 125<br>Columbus, OH 43219 | )<br>)<br>)<br>)<br>) | |
| Defendant. | )<br>) | |

Plaintiff JESSE CARRADINE Jr. by and through undersigned counsel, as his Complaint against the Defendant, states and avers the following:

**PARTIES**

1. Plaintiff Jesse Carradine is a resident of the city of Cincinnati, Hamilton County, state of Ohio.

2. Defendant ST. BERNARD SOAP CO. ("SBSC") is a foreign-incorporated company that conducts business throughout the state. The location of the events and omissions of this Complaint took place is its location at 5177 Spring Grove Avenue, Cincinnati, OH 45217.

3. SBSC is, and was at all times hereinafter mentioned, Carradine's employer within the meaning of Title VII of the Civil Rights Act of 1964 ("Title VII") 42 U.S.C §2000e and R.C. § 4112.01(A)(2).

## JURISDICTION & VENUE

4. All of the material events alleged in this Complaint occurred in Hamilton County, Ohio.

5. Therefore, personal jurisdiction is proper over Defendant pursuant to Ohio Revised Code §2307.382(A)(1), (3) and/or (4).

6. Venue is proper pursuant to Civ. R. 3(B)(2), (3) and/or (5).

7. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

8. Within 180 days of the conduct alleged below, Carradine filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC", Charge No. 473-2020-00314) against Defendant ("EEOC Charge").

9. On or about June 8, 2020 the EEOC issued and mailed a Dismissal and Notice of Rights letter to Carradine regarding the EEOC Charge.

10. Carradine received the Dismissal and Notice of Rights from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1), which has been attached hereto as Plaintiff's Exhibit 1.

11. Carradine has filed this Complaint on or before the 90-day deadline set forth in the Dismissal and Notice of Rights.

12. Carradine has properly exhausted all administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

13. Carradine is a former employee of SBSC.

14. At all times noted herein, Carradine was qualified for his position with SBSC.

15. At all times noted herein, Carradine could fully perform the essential functions of his job, with or without a reasonable accommodation.

16. Carradine is African-American, placing him in a protected class for his race.

17. Carradine worked for SBSC as a line package technician from April 15, 2019 until SBSC terminated Carradine's employment on or about June 3, 2019 citing performance and attendance.

18. Notably, Carradine did not have the requisite points per SBSC's policy to result in termination for his attendance and was not afforded the opportunity to move through SBSC's progressive discipline system prior to termination.

19. Carradine's early employment with SBSC was generally positive, he was under Chelsea Ferguson (line lead, Caucasian) loading soap, recording data, troubleshooting problems on his production line, and other similar work. Carradine took to the computer-side of the job fairly quickly.

20. Beginning in or around May 2019, Carradine began to have some minor confrontations with Ferguson. They were both frustrated in their work, but Ferguson had a much shorter fuse with Carradine than she did with Caucasian new-hires.

21. Ferguson also generally refused to repeat orders, a detrimental trait for people training new hires to a job.

22. Carradine liked to ask questions and have his instructions repeated to ensure that he performed his job as well as he could, so Ferguson's desire not to repeat herself was a big factor in how SBSC set Carradine up to fail in his position.

23. Ferguson's refusal to answer questions also caused serious friction between Carradine and Ferguson and interfered with Carradine's ability to perform the essential functions of his job.

24. Despite some training on other areas of the line, Carradine was kept primarily at the soap loading station, dropping loads of soap and recording the data.

25. Carradine had been told by SBSC, however, that he would receive a lot of cross training and should be ready to work in any position on the production floor.

26. While Carradine did briefly work on other parts of his line on a small number of occasions, he did not receive much cross training, so he began to ask Ferguson about how to make that cross training happen.

27. In or around late May 2019, John (LNU, line package technician, African-American) had left the company.

28. Shortly after John (LNU) left, SBSC hired Amber (LNU, Caucasian) to his previous position. Carradine helped train and orient Amber (LNU).

29. Carradine also helped Amber (LNU) get comfortable in forklift driving, as she had never done any before SBSC.

30. On or about May 31, 2019, Ferguson sent Carradine to the soap loading position once again.

31. Carradine asked instead to be cross-trained on other spots of the line to help familiarize himself further with the line's other positions instead.

32. Carradine also mentioned how Ferguson had already begun cross-training Amber (LNU), which was a disparate benefit Amber (LNU) received over Carradine.

33. Ferguson did not give any specific reason for this disparity between the two and pushed back on Carradine's requested cross-training.

34. Carradine asked again, noting that he was expecting to be tested on all parts of the line and that his job likely depended on the results of that impending test.

4

35. This resulted in an argument between Carradine and Ferguson, but eventually the two calmed the situation down and Ferguson relented to allow Carradine to start receiving some cross-training via shadowing her on a new spot of the line.

36. Carradine assumes that Ferguson reported him to HR for this event later on.

37. This is where Carradine's employment took a dramatic shift for the negative and when Ferguson began to aim for his termination.

38. The worst issue for Carradine during his employment was with a maintenance worker (name unknown, Caucasian, male, referred to herein as "(NU)").

39. Carradine had heard rumors about (NU) previously, primarily that he was hot-headed and got aggressive quickly, seemingly without much cause.

40. While (NU) was working on the J-Line, Carradine tried to help him in the work, but (NU) just screamed at Carradine to back away.

41. Carradine did so, then went to work on other tasks. The second time this happened, (NU) got aggressive again and yelled at Carradine.

42. Carradine told (NU) that he would not accept bullying from a coworker.

43. Luckily, that situation did not result in a physical altercation, but Carradine assumes that (NU) reported him for it anyway, despite (NU) being the instigator.

44. On or about June 3, 2019, Carradine's employment was terminated.

45. As Carradine ate his lunch in the early afternoon (notably, Carradine was off work that day), Mike (LNU, plant manager or potentially in HR, Caucasian) called him.

46. Mike (LNU) told Carradine that his employment was being terminated, citing attendance and poor performance.

47. Carradine pushed back noting that he was picking up his role well but needed more familiarity with the cross-training in other positions on the line (he had only been placed on different spots on the line a couple shifts throughout his employment).

48. Carradine also noted that he had only three (or less) attendance points, less than the requisite number needed for his termination per SBSC policy.

49. Regarding the cited-reason of attendance, Carradine was late (his first tardy) on or about May 5, 2019, he called in ahead of being tardy to work.

50. On or about May 10, 2019, Carradine clocked in at 6:37 AM, so was barely outside the brief window for tardiness.

51. On or about May 22, 2019, Carradine had had an issue with his SBSC badge over the past few days. When he came to clock in that day after his days of trouble with the badge, his badge didn't work so he had to contact HR to get in; Carradine clocked in approximately five minutes late as a result that day, though SBSC was aware of his on-time arrival via his conversations with HR.

52. SBSC, vicariously through Ferguson, set Carradine up to fail in his position. He attempted to get the training on the positions he was expected to learn, but Ferguson generally refused to cross train him in those roles, despite doing so for Amber (LNU), the Caucasian employee.

53. Carradine complained to Ferguson about Amber (LNU)'s cross training when he was not receiving that same training for discriminatory reasons.

54. This protected complaint came shortly before Carradine's termination. The temporal proximity between Carradine's protected complaint and his termination imply a retaliatory reason for his termination.

55. Defendant's termination of Carradine was an adverse employment action against him.

56. Defendant's purported reason(s) for Carradine's termination was pretextual.

57. Defendant actually terminated Carradine's employment discriminatorily against his race and/or in retaliation against his protected complaints.

58. As a result of the above, Carradine has suffered damages.

**COUNT I: RACIAL DISCRIMINATION IN VIOLATION OF R.C. §4112, *et seq*.**

59. Carradine restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

60. Carradine is African-American, and thus is in a protected class for his race.

61. R.C. § 4112 *et seq*. provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's race.

62. Defendant treated Carradine differently than other similarly situated employees based upon his race.

63. Defendant's termination of Carradine was an adverse employment action against him.

64. Defendant's purported reason(s) for Carradine's termination was pretextual.

65. Defendant actually terminated Carradine's employment due to his race.

66. Defendant violated R.C. § 4112 *et seq*. by terminating Carradine because of his race.

67. Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by treating Carradine differently from other similarly situated employees outside his protected class.

68. Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by applying their employment policies in a disparate manner based on Carradine's race.

69. Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by applying their disciplinary policies in a disparate manner based on Carradine's race.

7

70. Carradine incurred emotional distress damages as a result of Defendant's conduct described herein.

71. As a direct and proximate result of Defendant's acts and omissions, Carradine has suffered and will continue to suffer damages.

### COUNT II: RACIAL DISCRIMINATION IN VIOLATION OF TITLE VII

72. Carradine restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

73. Carradine is African-American, and thus is in a protected class for his race.

74. Title VII provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's race.

75. Defendant treated Carradine differently than other similarly situated employees based upon his race.

76. Defendant's termination of Carradine was an adverse employment action against him.

77. Defendant's purported reason for Carradine's termination was pretextual.

78. Defendant actually terminated Carradine's employment due to his race.

79. Defendant violated Title VII by terminating Carradine because of his race.

80. Defendant violated Title VII by treating Carradine differently from other similarly situated employees outside his protected class.

81. Defendant violated Title VII by applying its employment policies in a disparate manner based on Carradine's race.

82. Defendant violated Title VII by applying its disciplinary policies in a disparate manner based on Carradine's race.

83. Carradine incurred emotional distress damages as a result of Defendant's conduct described herein.

84. As a direct and proximate result of Defendant's acts and omissions, Carradine has suffered and will continue to suffer damages.

## COUNT IV: RETALIATION

85. Carradine restates each and every prior paragraph of this complaint, as if it were fully restated herein.

86. As a result of the Defendant's discriminatory conduct described above, Carradine complained of the discrimination, harassment, and disparate treatment he was experiencing.

87. Subsequent to Carradine's complaints to management about harassment, bullying, and disparate treatment toward him, Defendant took adverse employment actions against Carradine, including terminating his employment.

88. Defendant's actions were retaliatory in nature based on Carradine's opposition to the unlawful discriminatory conduct.

89. Pursuant to R.C. § 4112 *et seq*. and Title VII, it is an unlawful discriminatory practice to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice.

90. As a direct and proximate result of Defendant's retaliatory discrimination against and discharge of Carradine, he has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## DEMAND FOR RELIEF

WHEREFORE, Carradine demands from Defendant the following:

9

a) Issue a permanent injunction:

   i. Requiring Defendant to abolish discrimination, harassment, and retaliation;

   ii. Requiring allocation of significant funding and trained staff to implement all changes within two years;

   iii. Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;

   iv. Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

   v. Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

b) Issue an order requiring Defendant to expunge his personnel file of all negative documentation;

c) An award against each Defendant for compensatory and monetary damages to compensate Carradine for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

d) An award of punitive damages against each Defendant in an amount in excess of $25,000;

e) An award of reasonable attorneys' fees and non-taxable costs for Carradine's claims as allowable under law;

f) An award of the taxable costs of this action; and

g) An award of such other relief as this Court may deem necessary and proper.

                Respectfully submitted,

             __/s/ Matthew Bruce____
             Matthew G. Bruce (0083769)
                 Trial Attorney
             Evan R. McFarland (0096953)
             **THE SPITZ LAW FIRM, LLC**
             Spectrum Office Tower
             11260 Chester Road, Suite 825
             Cincinnati, OH 45246
             Phone: (216) 291-4744 x173
             Fax:   (216) 291-5744
             Email: Matthew.Bruce@SpitzLawFirm.com
             Email: Evan.McFarland@SpitzLawFirm.com

             *Attorneys for Plaintiff Jesse Carradine*

## JURY DEMAND

Plaintiff Jesse Carradine demands a trial by jury by the maximum number of jurors permitted.

   /s/ Matthew Bruce
Matthew G. Bruce (0083769)